Please the court. Frank Wazior on behalf of the appellants, the Herrera appellants and the Huerta appellants. I'd like to address first the issues on the summary judgment motion under Rule 56 and then I'll turn to the Rule 37 issues dealing with the terminating sanctions. With regard to the Rule 56 dealing with the county individual defendants, there was a case that I cited in my opening brief at pages 24 to 25, which was the Nissan Fire Insurance Company v. Fritz case at 210 F3rd 1099. I cited the page number 1102. It's a 9th Circuit 2000 case authored by Judge Fletcher and it deals with the procedural requirements obviously under Rule 56. And I think it's fairly well established and undisputed that under Rule 56e, I believe 1, and Judge Fletcher expounded on this Rule 56. A non-moving party has no burden of even responding to a Rule 56 motion if the moving party doesn't meet its initial burden of production. And it's our contention that, and we did raise it at the district court, that the county individual defendants were lying on the County of Los Angeles request for admissions. That was the only evidence placed in the record for purposes of the summary judgment motion. Well, but counsel, so categorizing that as being the county rather than the county sheriff's, I take it is your point. I'm sorry, I have no trouble with that. Oh, I'm sorry. I apologize. You're saying that, well, these were actually propounded on behalf of the county rather than the deputy sheriff's. These are requests for admission, right? The County of Los Angeles was dismissed from the case two years earlier. Before these RFAs were even. . . Right. Under Monell liability, they were no longer a party. And under Rule 56. . . You had to understand it was actually being propounded on behalf of the deputy sheriff's, didn't you? But the evidence on behalf of the individual sheriff's, if I understand you correctly, was based on the request for admissions propounded by the county. But you're saying they were propounded by the county. I understand the title said propounded by the county. I get that. But at the time they were propounded, the county had been out of the case for two years. And it was the same council who had represented the county and was representing the sheriff's. So you had to recognize that was a scrivener's error on the title, that these were really by the county defendants. Well, I don't think it's our burden to recognize or not. The face of the record is those requests for admissions were propounded by a non-party to the suit at that point. More than two years after the dismissal. Did you send an e-mail saying, I don't understand, why are you propounding RFAs on behalf of a non-party? Whatever the mistake was, the mistake was something the county had made, not us. And I don't see how that changes the structure under Rule 56. It just seems a little bit like. . . It's a non-party anymore. It's a no-ity. But it just seems a little like gamesmanship to say, well, ha-ha, they made a mistake. I'm not going to say anything. But once again, if one reads Nissan Fire and reads Rule 56, it's very clear that we don't have that burden to respond or correct the county. The county was no longer a party. It's a no-ity. And there are cases, although I admit that there are no circuit cases I could find. I did find a district court case out of the Midwest. If the court would like, I can give a site. It's not a published federal supplement case. I think it's called Moore v. United States. It's Westlaw 816-8271. It's a 2005 case. But for whatever it is, it talks about the fact that a non-party that propounds requests for admissions is simply a no-ity under Rule 36. Did that case involve a situation where the same council was representing the party who had been dismissed and the party who was still in the case? And they had actually overlapping titles of county and county deputy sheriffs? But once again, I don't see where that distinction makes any kind of a difference, respectfully. Because once again, the actual document itself that was propounded was propounded in the name of the county. Now, if the county was making a mistake and they were intending to propound it on behalf of the individual defendants, certainly that was their responsibility, not mine. But I do want to point out that it's very interesting. If they were, in fact, propounding it on behalf of the individual defendants, I don't see why they did not list any of the individual defendants as a propounding party. Well, why would they propound them on behalf of the county two years after the county was dismissed? I think that is a good question, and that's something to be asked of the county but not of the non-moving party. Once again, that's not our burden under Rule 56. And another point being that even if that is what, assuming arguendo, that the county has a right to propound it or that it's a mistake and it can be somehow overlooked, the parties to the proceedings being the children, and one of them being William Ryan Herrera, who is the older child who's not even a minor, I don't see how that could be binding on them. It was not propounded to the... Did you press that argument below? Pardon me? Did you press that argument below, that it should not be binding as to the children? Correct. Could you point me in the record to where you pressed that argument in the district court? I believe that was in volume number three, and I think that was at pages... I don't have the exact page number, but it was in the record where I raised the issue that it was a non-party, that that was also the children. But Rule 36 on its face states very clearly that a party to the proceeding, it only binds even the party that it's propounded to, but cannot bind it to any other proceeding. Certainly, I have never heard, I don't think there's any case law I know of, and perhaps I respectfully can be corrected, that a other party in the proceeding is somehow bound by the request for admissions. So, at the minimum, it would seem to me, even assuming arguendo, Your Honor's argument, it still doesn't bind the children. Turning to the question of the city, or the summary judgment motion on the city, which is, I think, a much more difficult... to my mind, a much more difficult question, and I'd like to talk about the England Reservation. I recognize that an England Reservation can bind, in certain circumstances, even claim preclusion. And I believe counsel cited the San Remo Hotel case versus City County San Francisco. It was a case that went up, I think, 2005 or so to the U.S. Supreme Court. Once again, Judge Fletcher threw out the case before it went up. I know the procedural history was that they had originally filed certain state law claims in this court, and then it was dismissed under Pullman abstention. They went back to state court. They litigated their inverse condemnation claim under the California Constitution all the way up to the California Supreme Court. They lost four to three. They came back. They then argued to the circuit that we did an England Reservation. Judge Fletcher said, and I think this was the salient point, that since you exposed your takings claim to the state court, and the state constitution under the takings clause is congruent to the Fifth Amendment takings clause, it was the same as if you had exposed your federal claim, and therefore claim preclusion applied. It went up to the U.S. Supreme Court, and it was, I think, an 8-0 or 9-0 decision authored by Justice Stevens, late Justice Stevens. But that's not the case here. We never exposed any of the federal claims nor made any of the arguments, and I don't know of anything that's been pointed out in the record where we exposed any of the federal claims. Did the state court find that the motel was a nuisance? Pardon me? Did the state court find that the motel was a nuisance? Yes, absolutely. And so at least from an issue preclusion standpoint, that issue. I don't deny that. They did, and there had been multiple code violations that the state court found, and that went up on appeal, and the Court of Appeals affirmed it. However, I don't think that ends the analysis. I do want to point out one point. There's a case that I believe Judge Fitzgerald, who is the district court judge in this case, pointed out in his order, the Keystone-by-Two-Meters Cold case versus Denim-Benictus, which is a case authored, came out of the U.S. Supreme Court, I think, in 2005 or so, and it was a 5-4 decision, and it talked about the fact that a nuisance property has no right to a takings claim, and it based it on an 1850s or 1855 U.S. Supreme Court case, Mugler versus Kansas. Very interestingly, and I take the position, I know this court cannot overturn it, but I will state it for the record, it was a 5-4 decision. The dissent was authored by the late Justice, Chief Justice Rehnquist. I believe the late Justice O'Connor of Scalia, and if I'm not mistaken, Powell, was still sitting on the court, and they joined in on the dissent, and they argued that true, a nuisance case limits in some sense perhaps a takings claim, but the scope of the relief is still subject to the takings clause. So in other words, the Penn Central test still applies potentially to a nuisance property because if a property is somehow, the government goes and imposes too harsh conditions on the property, in some sense, as we had claimed here by closing it, and closing it without even a hearing, a procedure due process hearing before you went to court, that might be a taking, might be a temporary taking. So my position is that that doesn't end the analysis. I'm not going to concentrate on the substantive due process issue, but I do want to say on the procedural due process issue, Judge Fitzgerald said that I, and Judge Fitzgerald recognized there was a case he cited that I've always cited in other cases, Clements v. Washall Board Authority. It's a case out of this circuit, and it talks about a biased proceeding. It has no effect. Can you tell me a little bit more about your First Amendment argument? I guess I just don't see the petitioning activity. So the First Amendment argument, I believe there was petitioning activity, clear petitioning activity by Mr. Herrera. What was it? What was the petitioning activity? He met with the city manager. He met with city officials. He met with the police department officials. But I thought you said in your brief the petitioning activity that gave rise to your claim was refusing the search. Pardon me? I thought you said in your brief that the petitioning activity on which you were relying for your retaliation claim was refusing to consent to the search. To the extent that they had asked to see his records and to see his motel records, and he refused to do that without having a warrant. So refusing to turn over records is petitioning activity in your view? I think standing on his right when he meets with them and they request to see it and he denies them the right standing on his constitutional rights, I think that's within the scope. The petition clause is very, very broad. It applies to the administration. I guess I just wonder if the Fourth Amendment would be a better locus for that particular right. They're asserting the right not to be searched without a warrant. It just seems like that's located in the Fourth Amendment, not the First Amendment. So if I understand Your Honor correctly, the right to deny the motel records would not fall within the Fourth Amendment? It would, I think, better within the Fourth than the First. I guess I don't understand it as a First Amendment argument. Well, I think that you can have multiple under Sodell County v. Cook, which is a 1994 U.S. Supreme Court case authored by Justice Scalia. You can certainly have multiple claims that fall within different constitutional provisions. I would say under the Fourth Amendment claim, I litigated a case. I was lead counsel in the Patel, City of Los Angeles Patel case, which dealt with motels. That's a case at 576 U.S. 409, 2015, that clearly protected, and it went up on BOG before it went up to U.S. Supreme Court. I argued it on BOG in 174, that motel records are clearly protected under the Fourth Amendment and require some kind of prejudicial process. Do you want to reserve time? Yes, I do, Your Honor. Okay. I just want to say under Rule 37, very, very briefly, I do believe there was good cause with my wife being in the hospital. But even if it wasn't, and I think, Judge, as I understand it, terminating sanction is the harshest sanction. There could have certainly been lesser sanctions under the circumstances, perhaps sanctioned myself, evidentiary sanctions, but not to throw the whole case. I would respectfully submit it was an error. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Valerie Escalante-Trosh, and I represent the City of Palmdale and the individual city defendants. Thank you for your time this morning. I think this case needs to be set with the backdrop of the state court action, particularly on the issue preclusion argument. The state court action involved the Herreras and their agents. They were an agent of an LLC that owned the property. The state court action determined that there were violations of law and nuisance conditions, as this Court pointed out. The state court action adequately looked at those issues and determined that there were these violations, that the city had properly issued this notice in order, identifying over 247 different violations of law. The court also acknowledged that the city had issued a notice to vacate under the applicable state laws that were applied. With that backdrop, then the federal court case. In the federal court case, as to the issue preclusion, the discussion on San Remo Hotel is applicable. The court there looked at the issue of whether issue preclusion, this court pointed it out, issue preclusion, not claim preclusion, not on the actual adjudication of the law, but on factual predicates that were necessary in the state court action, does that bind? And it does. There is a whole history that the Supreme Court goes through on the importance of giving credence and upholding the full faith and credit clause, and that discussion is critical for this analysis. So even if we assume issue preclusion as to the finding of nuisance and or the finding of the various code violations, does it per se follow that no pre-deprivation hearing is required? Or does it turn, to some extent, on the factual nature of the violations at issue and whether they rise to the level of an emergency, I guess, in particular? Thank you. So as to the question of pre-deprivation hearing, that speaks to the 14th Amendment procedural due process. First, I'm going to point out there wasn't much argument raised on that issue, but going to that argument in any event, there needs to be, in order for a pre-deprivation hearing, some non-emergency, correct, in order to afford that time. There's two points to this, two salient points. The first is that under the Uniform Code, right, the Uniform Housing Code, the Uniform Code for the Abatement of Dangerous Buildings, that state law which was applied for the notice to vacate never required a pre-hearing before issuing that notice. So if this court were to decide that some pre-deprivation hearing was required, that would circumvent the state law directly on this point that authorizes building officials to be able to vacate properties throughout the state of California when there is a finding of those urgent circumstances. Contemporaneous with that, right, with their issuance of a notice to vacate. But I think that turns on there being urgent circumstances. Correct. I mean, you can't have a state law that violates the Constitution. So if the Constitution requires urgent circumstances, state law would also have to require urgent circumstances, right? Right, and that speaks to the next point for the N&O. When the notice and order was issued contemporaneously, in that notice and order, the building official found the urgent circumstances, that there were 247 critical violations of law on this property. The building official found or the state court found? Both. So the building official with the code enforcement official issued this notice and order. That notice and order was contemporaneous with the notice to vacate back in 2016. When the state case, the receivership case, was litigated, a predicate to appointing a receiver is the issuance, the proper issuance and blessing of the court that the N&O, that notice and order, was properly issued and made adequate findings. And so the court also independently reviews that N&O in the state court action and says, I agree, there are substantially dangerous conditions. They were given notice and were not able to remediate those conditions. Therefore, a receiver is appointed. So to your point on the emergency, there were two decisions that were made. First, on the staff level, that they were authorized to make those decisions under the Health and Safety Code. Then it was also reviewed and looked at by the state court. But the staff level decisions wouldn't be the subject of issue preclusion in the federal court, right? I think it wouldn't, Your Honor. You're right. But I add that detail because we're looking at this from the context of if you were to choose otherwise and say there is this pre-deprivation hearing that is necessary, that does circumvent staff's ability to make these fundamental findings every time that there is some type of urgency and have to wait then for a state court action. That's not what the state law envisions. And I understand your argument that if there's some constitutional violation, they shouldn't be able to do that. I get that. But in this circumstance, even putting aside the staff level decision, the court looked at that. The court looked at that notice in order that was contemporaneous with the notice to vacate and said, this is valid. And so that was litigated and looked at already with the state court action. In terms of the violations that occurred here, in your view, what would be an example of one that was like an urgent situation that we can't wait for a pre-deprivation hearing? Give me just an example or two. Sure, Your Honor. There were numerous violations related to mold conditions. There were numerous violations with respect to just substandard living conditions that the individuals were living at. I believe there was also unpermitted construction at the site. And so there were individuals and children living on site that those violations could not sustain them living there on site. Now, going back to the issue preclusion argument, it is imperative to recognize that the court did look at these. And so the court, of course, didn't address the legal takings claim. But those facts that were decided, that the property was a nuisance, that the property was substantially dangerous and endangering occupants, neighbors, and the community, that's the finding that the court made in its judgment, as well as the receivership order that was also upheld on appeal, all of those issues that were also litigated with Mr. Weiser representing the parties in that case. Those findings, those factual findings, are preclusion for any takings claim because the city didn't do any takings when it issued the notice to vacate. The court decided, independent of the city with a receiver, making a recommendation on what to do with the property, and the court blessed it. That cannot be a taking requiring compensation. And, in fact, in the state case, when you look at the records, the motel owner, represented also with the agent Mr. William Herrera, had the opportunity to step in and provide a remediation plan and also pay for the property to avoid what was happening in the receivership and was unable to do so. So they actually also had those opportunities to avoid any claims. So to speak of a taking when there is no taking effect. And I think the terminating sanction issue is an issue for your client, right? Correct. So could you just use some of your remaining time to sort of fill out your views on that terminating sanction and whether the court should have considered lesser sanctions before imposing a terminating sanction?  The court did consider lesser sanctions. There were, several years prior, an order compelling discovery, sanctions that were already issued in the case. And so what happened in this case is that plaintiffs, the appellants here, did not disclose evidence and tried to use that evidence on MSJ, in opposition, for the first time in the opposition. Photos and it looked like a screenshot, a video, and also some conflicting testimony as to what happened, some incendiary assertions as to being held at gunpoint. The city's evidence showed that the city's officials don't even have access to guns. They're code officers and building officers. It couldn't have been and wasn't them involved in those facts. The court agreed to strike that. But the court, nonetheless, gave a lifeline for that remaining Fourth Amendment claim. It wasn't subject to the court's underlying motion for summary judgment. The court said, we're going to open up discovery again for you, Mr. Weiser, and your clients. We're going to give you two additional months. Disclose that evidence. Sit for depositions. And also, you can take depositions if you'd like as well. That was in the court's February 2024 order. As we've stated on the court below, we have every sympathy for Mr. Weiser and his family and the conditions. But during that two-month period, we noticed their depositions starting early March. Two months passed. We were following up approximately every week, week and a half, and we independently continued those depositions in order to try to accommodate, but we were not getting a response. We got one phone call on April 17th that said I couldn't, that the dates weren't available. Nothing further until the night before the deadline for that order. And so it absolutely was not followed, and that's the critical order that was not followed to support terminating sanctions. And warnings were given previously because there were already discovery issues that were involved in the case. And then preceding that, you'll see in the record, even the year before we had spent an entire summer noticing depositions that they never appeared for and never coordinated. Unless there's any further questions, I see my time is up. Thank you so much. Thank you. We'll hear from a co-counselor. The other guy on the same side of the beam. If it pleases the court, my name is Craig Miller from the firm of Saki Nishimura and Watase. I represent the individual county defendants who are Deputy Dana, Deputy Jacobs, Deputy Munoz, Deputy Leon, Deputy Arciocondo. I probably blew that one. Deputy John Gallagher, Deputy Soro, Deputy Miles, Deputy Diaz, and Deputy Waldron. I would like to start off with if the court has any questions, I'd answer them. This is a fairly straightforward case as to my client. So your request for admission didn't list any of the names that you just read off for the court, right, in terms of who was propounding the request for admission? That is correct. I believe it asked no, admit no LASD deputy, something along those lines. But I'm just saying in the title of who was propounding them, your colleague across the via is right, that who was listed was the county, not the deputies, right? That is correct, Your Honor. I was thinking about that question, and I think if plaintiffs were to be right, it would be a nice trick. If we had one person propound all the discovery, then under his theory he could just dismiss that defendant, whether they noticed the deposition, or answer it on behalf of everybody and say, you have no responses to discovery, that person's a non-party now. Well, but when you propounded these requests for admission, the county wasn't a party, right? You're talking about a different situation where somebody propounds discovery, later goes out of the case, that doesn't make the discovery go away. That seems right. But a non-party doesn't get to propound requests for admission in a case, right? Correct. As the court pointed out, there was the Scrivner's error. We represented both the county and the individuals. We generally refer to them as the county defendants. It was a little interesting as I went through this case that they were called subsequently the county individual defendants, and we probably should have put the word individual in there. However, I also note that Mr. Weiser knew who he was dealing with. He knew who was following up on the meet-and-confers. He knew what the parties were, so he was not exactly caught blindsided by this. And with regard to the requests for admission themselves and why they led to summary judgment below if they were deemed admitted, it seems like one of the requests for admission was something along the lines of, nobody from the county violated so-and-so's, the Herrera's Fourth Amendment rights or something like that, right? It was sort of a legal conclusion dressed up as a request for admission. Which I understand is allowed. You can ask facts or admissions of law, and it was not only to the Fourth Amendment, but it was to every different amendment that he had laid out. Sure. I was just giving the example. So your argument is just you can request an admission with regard to the law. Is that right? That's my understanding, yes. Okay. And what about with respect to— some of these things were directly contrary to things that had been alleged in the complaint, right? I mean, so you would have a complaint allegation that these people were here on this date, and you would have a request for admission, admit that those people were not there on that date, right? You're directly contradicting some of the allegations in the complaint with your request for admission. Yes. We were trying to flesh out facts. Obviously, the complaint says a lot of things. Okay. What was the state of the actual record? So let's take that, I think, as one example. So the allegation says on November 15th or whatever, these L.A. County deputies were present at the property, and the request for admission says, admit that on that date they weren't actually there. What does the record tell us about whether they were or weren't there that day? I believe the record's fairly devoid of that type of detail because of the manner in which we moved for summary judgment. It was based on the RFAs and being deemed admitted in that alone. So in response to that, Mr. Weiser didn't come forward with evidence saying, it's odd, I mean, I get what you're saying about the request for admission, but here's a picture of these guys standing there on that date or something like that. He never responded materially to other discovery, not in his initial disclosures or in response to the city's interrogatories and requests to produce. I see. I did want to address briefly his failure to oppose the MSJ under Rule 56F. The court on its own could have looked at the state of the record, saw the request for admissions had been deemed admitted, and entered judgment even on its own after identifying for the party's material facts that may not be genuinely in dispute. So there was ample grounds to do it. My last comment would be, even if he somehow got the MSJ overturned, he did not move on appeal, or they did not move on appeal, to set aside the granting of the deemed admissions or the denial of his ex-party. So he hasn't even cleared the first hurdle to get to the second. If the court has no further questions, I would submit. Okay. Thank you. Oh, yeah. Counsel, you mentioned you were having some hearing issues. We've got some headphones for you, if you'd like. You mentioned you were having some hearing issues. No, no, I'm fine. I'm fine. Okay, because if you need it, we have some. Yeah, yeah, yeah. Okay. I'll be very brief. With regards to counsel for the cities, my esteemed colleagues counsel arguing about the record in the state case and the nuisance violations, I think Your Honor pointed out very cogently here the issue about the pre-deprivation hearing and whether it was an emergency. There were two cases I cited in my opening brief, one in particular, which I'm very, very familiar with, because I had a companion case in this circuit that was published in 1996. Armendariz v. Penman. It was an en banc case at 75 F. 3rd, 860. I litigated the companion case, Patel v. Penman. Penman was James Penman, the former elected city attorney of San Bernardino, at 103 F. 3rd, 868, 1996. I think the Armendariz case was 1995. But that case is very clear that the emergency exception under the Due Process Clause, a very, very narrow exception, and cites cases from the Supreme Court that it's usually when you have dangerous chemicals on the property, a fire on the property, but it doesn't just broadly sweep in everything. And besides that, Armendariz is also very clear, based on Supreme Court authority, even if there was an emergency, they still have to provide a post-deprivation hearing, which was not provided here. And we argued that that January 23rd hearing was not the required post-deprivation hearing. Judge Fitzgerald said there was no evidence it was a biased proceeding so that the post... Yeah, your only evidence that it wasn't a proceeding was a bias, right? I think it was reasonable inference it was biased. We came there. I was there. We came there. We didn't talk about whether there were, in fact, violations or the scope of the violations or the remedies. The only thing the city wanted to know is, did you correct the violations according to them? So I think that just that on itself, on its face, raises at least a reasonable inference. Understanding you're already a little over on your time, I'd like to ask one question, and that is your response to your colleagues on behalf of the deputy sheriffs that you did not appeal the district court's decision that denied the ex parte request to withdraw the deemed admissions? Well, I think it's a... Once again, it's a distinction without a difference because of the fact that the face of the record, once again, I don't think the county, regardless of whether I asked to withdraw and I didn't appeal it, the county never met their... The individual defendants, county individuals, never met their burden. They just never met the production requirement. Well, if the requests for admission were deemed admitted, they met their burden, didn't they? If it's a non-party, it's a nullity under Rule 36. I see. Okay. That's my argument. And once again, Rule 36A1 ties in not only the fact that it has to be a party to a party, but it says that the scope of what can be discovered is under Rule 26A1, and that talks about... So if we were to reject that argument, then you would agree you didn't appeal the ex parte... Right. It just simply is, no, we didn't meet a burden. We didn't have to meet a burden because there was nothing that was met by the other side. I do want to point out one thing on factually, and I'll be very, very brief. I know I may have extended my time. Judge Fitzgerald talked about this issue of disclosure. I want to point out that Matthew Silver of Silver & Wright, who litigated this case, initially defending it, was also the attorney who prosecuted the case in the state court. He eventually left this case. My esteemed colleague took over. But he left to their firm. He is, at least at the time of the hearing, a part of their firm. And he took all that with him, and he gave a declaration. I think that's in Volumes 3 through 5 of this record. He gave an extensive declaration of all his knowledge in the state court proceeding. These proceedings were intertwined in that respect. You're over. We'll take a look at it. Thank you very much. Thank you. Thank you to all counsel for your arguments in this case, and the case is now submitted.
judges: NELSON, VANDYKE, Cole